IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| LLOYD POWELL,<br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br>    Defendant. | Civil No. 3:16-cv-56 (REP) |

## REPORT AND RECOMMENDATION

On August 20, 2012, Lloyd Hall Powell, Jr. ("Plaintiff") applied for Social Security Disability Benefits ("DIB") under the Social Security Act ("Act"), alleging disability from a stroke, speech problems, right side pain, a crooked right leg, diabetes and high blood pressure with an alleged onset date of June 14, 2012. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred by failing to make a function-by-function assessment and by conducting an improper *Craig* analysis. (Mem. in Support of Pl.'s Mot. For Summ. J. ("Pl.'s Mem.") (ECF No. 10) at 3-10.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for

summary judgment, rendering the matter now ripe for review.[1] For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 8) and Plaintiff's Motion to Remand (ECF No. 9) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 11) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On August 20, 2012, Plaintiff filed an application for DIB with an alleged onset date of June 14, 2012 . (R. at 137-45.) The SSA denied these claims initially on October 19, 2012, and again upon reconsideration on August 8, 2013. (R. at 55-78.) At Plaintiff's written request, the ALJ held a hearing on October 2, 2014. (R. at 20-54, 83-84.) On November 19, 2014, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because he could perform his past jobs as a cleaner and a maintenance supervisor, as well as other jobs in the national economy. (R. at 7-18.) On December 15, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner subject to review by this Court. (R. at 1-3.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a

---

[1] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether a disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite

3

his physical and mental limitations. 20 C.F.R. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform his past work given his RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On October 2, 2014, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert ("VE") testified. (R. at 20-54.) On November 19, 2014, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 7-18.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 7-18.) At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity between his alleged onset date of June 14, 2012 and his date last insured of March 31, 2013. (R. at 12.) At step two, the ALJ deemed Plaintiff's diabetes mellitus and cerebrovascular accident "severe" impairments under 20 CFR § 404.1520(c), because they were medically determined and imposed more than minimal limitations on the claimant's ability to perform basic work activities through the date last insured. (R. at 12.) At step three, however, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR § 404, Subpart P, Appendix 1. (R. at 12-13.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform medium work as defined in 20 CFR § 404.1567(c), which included occasionally lifting and carrying fifty pounds and frequently lifting and carrying twenty-five pounds; he could sit, stand, or walk for six hours in an eight-hour day. (R. at 13.) Plaintiff could constantly push or pull at the medium exertion

4

level; he could frequently climb stairs or ramps; frequently balance, stoop, kneel, crouch or crawl; and, he could occasionally be around unprotected heights. (R. at 13.) Plaintiff could never climb ladders, ropes or scaffolds. (R. at 13.) At step four, the ALJ found Plaintiff's impairments did not preclude him from performing his prior relevant work as a cleaner and maintenance supervisor. (R. at 16-18.) At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 16-18.) Therefore, Plaintiff did not qualify as disabled under the Act.

## IV. ANALYSIS

Plaintiff, sixty-seven years old at the time of this Report and Recommendation, previously worked as a cleaner and maintenance supervisor. (R. at 139, 162.) He applied for Social Security Benefits, alleging disability from a stroke, speech problems, right side pain, a crooked right leg, diabetes and high blood pressure with an alleged onset date of June 14, 2012. (R. at 137-45, 161.) Plaintiff's appeal to this Court alleges that the ALJ erred by failing to (1) make a function-by-function assessment, (2) conduct a proper *Craig* analysis and (3) make a meaningful credibility finding at step two of the *Craig* analysis. (Pl.'s Mem. at 3-10.) For the reasons set forth below, the ALJ did not err in his decision.

### A. The ALJ did not err by failing to perform a function-by-function analysis, because substantial evidence from the record supports the RFC conclusions.

Plaintiff first argues that the ALJ erred by failing to make a function-by-function assessment. (Pl.'s Mem. at 3-4.) According to Plaintiff, the ALJ's opinion included no discussion linking evidence in the record to the ALJ's conclusions, thus requiring reversal. (Pl.'s Mem. at 3-4.) For example, Plaintiff contends that the ALJ's decision does not explain how he determined that Plaintiff could "lift 50 pounds occasionally and 25 pounds frequently, or walk, sit, and stand six hours a day." (Pl.'s Mem. at 3.) Further, Plaintiff asserts that this error is not

harmless, because the missing discussion pertains to relevant and contested functions. (Pl.'s Mem. at 3-4.) Defendant responds by arguing that the ALJ complied with the requirements for a proper RFC assessment, which included a function-by-function analysis. (Mem. in Support of Def.'s Mot. For Summ. J. ("Def.'s Mem") (ECF No. 11) at 11-14.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.902(e)-(t), 416.945(a)(1). In analyzing a claimant's abilities, the ALJ must first assess the nature and extent of a claimant's physical limitations and then determine the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 416.945(b). Generally, the claimant shoulders the responsibility for providing the evidence that the ALJ utilizes in making his RFC determination; however, before determining that a claimant does not have a disability, the ALJ must develop the claimant's complete medical history, including scheduling consultative examinations if necessary. 20 C.F.R. § 416.945(a)(3). The RFC must incorporate impairments supported by the objective medical evidence in the record, as well as those impairments based on the claimant's credible complaints. *Carter v. Astrue*, 2011 WL 2688975, at \*3 (E.D. Va. June 23, 2011); *accord* 20 C.F.R. § 416.945(e).

Social Security Ruling 96-8p instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing SSR 96-8p). The Ruling further explains that the RFC "assessment must include a narrative discussion describing how the

evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (citing SSR 96-8p).

The ALJ's failure to conduct a function-by-function analysis does not necessarily result in an automatic remand. The Fourth Circuit rejected a *"per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio,* 780 F.3d at 636. Indeed, in light of *Mascio,* at least three district courts have found that in the absence of an explicit function-by-function analysis, the reviewing court "must assess whether the ALJ's RFC analysis considered the relevant functions, whether his decision provides a sufficient basis to review his conclusions, and, ultimately, whether substantial evidence in the record supports that decision." *Ashby v. Colvin,* 2015 WL 1481625, *3 (S.D. W. Va. March 31, 2015) (holding that ALJ did not conduct explicit function-by-function analysis of claimant's physical abilities, but sufficient evidence existed showing that ALJ analyzed the relevant function); *see also Scruggs v. Colvin,* 2015 WL 2250890, at *4 (W.D.N.C. May 13, 2015) (requiring remand because ALJ's decision did not address claimant's ability to complete tasks for a full workday); *Carver v. Colvin,* 2015 WL 4077466, at *10 (M.D.N.C. July 6, 2015) (recommending remand because ALJ neglected to assess claimant's ability to walk or stand for a full workday).

In this case, the ALJ considered the relevant functions and provided sufficient detail about how evidence from the record supported his conclusions regarding Plaintiff's RFC, such that this Court may conduct a meaningful review. (R. at 13-16.) The ALJ began by listing his conclusions regarding Plaintiff's RFC, function-by-function. (R. at 13.) The ALJ explicitly mentioned that Plaintiff could perform the following functions: occasionally lift and carry fifty pounds and frequently lift and carry twenty-five pounds; sit, stand or walk for six hours in an

7

eight-hour day; push or pull with medium exertion; frequently climb stairs and ramps, but never ladders, ropes or scaffolds; frequently balance, stoop, kneel, crouch and crawl; and, occasionally be around unprotected heights. (R. at 13.) These functions listed by the ALJ exceed the physical functions listed in 20 C.F.R. §§ 404.1545(b)-(d) and 416.945(b)-(d).

The ALJ then utilized evidence from the record to support the RFC determinations. (R. at 14-16.) The ALJ pointed to consistent evidence in the record that suggests that, while one could reasonably expect Plaintiff's ailments to cause some of the alleged symptoms, they would not manifest to the extent claimed by Plaintiff. (R. at 14-15.) The ALJ then looked to some of Plaintiff's acknowledged daily activities to support the RFC. (R. at 15-16.) Lastly, the ALJ aligned his conclusions with those of two state agency physicians. (R. at 15.) In aggregate, substantial evidence from these portions of the record supports the ALJ's RFC findings.

First, the ALJ addressed Plaintiff's claims about symptoms due to diabetes mellitus and concluded that proper medication controlled the condition. (R. at 14.) The ALJ noted that the evidence showed that Plaintiff did not experience significant problems associated with diabetes, namely issues with vision, kidneys, hands or feet, nor did he seek ongoing treatment with a specialist during the relevant period. (R. at 14.) Medical records obtained from Dr. Damian Covington support the ALJ's conclusion, demonstrating that Plaintiff manages his diabetes with medication, namely Humalog and Lantus. (R. at 310, 507-08.)

Next, the ALJ addressed Plaintiff's claims regarding the cerebrovascular incident and found that the incident did not result in severe limitations. (R. at 14-15.) The ALJ provided a lengthy review of Plaintiff's hospitalization from June 15, 2012 to June 18, 2012, including the various findings by medical staff. (R. at 14-15.) He cited findings that included CT and MRI scans of Plaintiff's brain, which indicated risk factors for a stroke. (R. at 14-15.) The ALJ also

noted, however, that Plaintiff's physical functions improved greatly over the course of his recovery in the hospital. (R. at 14-15.)

Plaintiff's medical records support the ALJ's RFC assessment. The record details Plaintiff's hospitalization in June 2012 due to weakness in his right arm and accompanying facial droop as a result of the stroke. (R. at 236, 241.) Additional hospital records indicate Plaintiff's susceptibility to a stroke, as a result of CT and MRI scans. (R. at 233.) Notably, however, Plaintiff's physical strength returned quickly thereafter. A physical examination performed by Drs. Eileen Chu and Edward Dillon on the day of the incident indicated that Plaintiff had normal range of motion and strength bilaterally in his arms and legs. (R. at 237.) Additionally, Plaintiff exhibited normal breathing, mood and orientation. (R. at 237.) Plaintiff's strength "greatly improved" during hospitalization. (R. at 233.) This evidence from the record supports the ALJ's conclusions regarding Plaintiff's regained strength following the cerebrovascular incident. (R. at 14-15.)

Although a later CT scan of Plaintiff's head from August 2013 showed changes of prior infarction and other risk factors, the results clearly showed no acute intracranial abnormality, ventricles within normal limits, no evidence of acute infarction, no intraparenchymal hemorrhage or abnormal extra-axial collection and no significant midline shift or evidence of transtentorial herniation. (R. at 437.) Subsequent medical records also support the ALJ's findings of Plaintiff's improved functions.

During follow-ups, medical examiners consistently reported normal physical functions, including gait and station, strength in his upper and lower extremities, and orientation, despite Plaintiff mentioning that he experienced weakness on his right side. (R. at 15, 313, 321-23, 329-

30, 370, 446, 465-66, 469, 499.) In response, Plaintiff points to no objective evidence in the record that conflicts with the ALJ's findings.

Plaintiff's own statements regarding his daily activities also support the RFC conclusions. (R. at 15-16.) During the hearing before the ALJ, Plaintiff stated that he could bathe and shower on his own, get up and dress himself, and eat with utensils. (R. at 33, 39.) Plaintiff also acknowledged that he could use a cell phone, follow plots in a television show, follow directions, cook, take walks and complete household chores, including washing dishes, vacuuming, sweeping, doing laundry and taking out the garbage. (R. at 32-33, 38-40.) With regard to specific weights that he could lift, Plaintiff stated that he could lift 100 pounds two or three times a day, and ten pounds frequently throughout the day. (R. at 33.) Further, Plaintiff stated in his function report that he could shop in stores, use public transportation, pay bills, count change, handle a savings account and use a checkbook and/or money orders. (R. at 178.)

Finally, the state agency physicians' opinions support the ALJ's RFC conclusions. In October 2012, neurologist Dr. J. Astruc concluded that Plaintiff had no severe limitations from his diabetes or stroke and therefore was not disabled. (R. at 57, 59-60.) Dr. Astruc noted that Plaintiff's medical records showed normal gait, normal strength and full range of motion following the stroke. (R. at 58.) Later, in August 2013, Dr. William Amos performed a reconsideration assessment. (R. at 62-68.) Dr. Amos found that, despite the stroke, Plaintiff had not experienced any severe limitations and his ability to perform basic work tasks remained unimpeded. (R. at 67.) Further, Dr. Amos noted Plaintiff's statements as "not entirely credible" as related to his symptoms' intensity, persistence and limiting effects. (R. at 66-67.) The physicians' analyses included reviews of Plaintiff's medical record. (R. at 60, 67-68.)

Thus, in aggregate, substantial evidence in the record supports the ALJ's conclusions regarding the functions outlined in Plaintiff's RFC. Although he did not discuss each function with specific reference to objective evidence, the ALJ did provide a narrative explanation of the evidence. This explanation allows the Court to conduct a meaningful review of the basis for the ALJ's conclusions. Therefore, the ALJ did not err by failing to perform a function-by-function analysis.

### B. The ALJ did not err at step one of the *Craig* analysis.

Plaintiff argues that the ALJ erred by performing an improper *Craig* analysis. (Pl.'s Mem. at 4-7.) Specifically, Plaintiff takes issue with the ALJ's assertion that Plaintiff's impairments could be reasonably expected to cause *some* of the alleged symptoms. This, according to Plaintiff, incorrectly applies the well-accepted *Craig* analysis. (Pl.'s Mem. at 4-7.) Defendant responds that the ALJ did conduct a proper *Craig* analysis and did not err by employing the word "some" in step one. (Def.'s Mem. at 14-15.)

When evaluating a claimant's subjective symptoms in the context of an RFC determination, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d at 594; *see also* SSR 96-7p; 20 C.F.R. §§ 404.1529(a), 416.929(a). The first step requires the ALJ to determine the existence of an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. SSR 96-7p at 1-3. The ALJ must consider all of the medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p at 5, n.3; *see also* SSR 96-8p at 13 ("[The] RFC assessment must be based on all of the relevant medical evidence in the record."). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires

11

the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595.

Here, the ALJ laid out the two steps of the *Craig* analysis at the outset of the decision. (R. at 13-14.) After a brief review of Plaintiff's alleged symptoms and acknowledged physical capabilities, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause *some* of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. at 14.) (emphasis added). Plaintiff seeks remand on the basis that use of the term "some" renders it a misapplication of *Craig*. (Pl.'s Mem. at 4-7.) This argument misinterprets step one, because step one only requires a threshold determination.

At step one, the claimant has a threshold obligation of showing the existence of a medical impairment reasonably likely to cause the pain alleged. *Craig*, 76 F.3d at 595. The yes or no question hinges on the existence of a medical impairment, not the amount of pain claimed. *See id.* (explaining the fundamental difference between evidence of pain and evidence of a medical condition). Only after the claimant meets this threshold obligation will the ALJ progress to step two and evaluate the extent to which the pain affects his ability to work. *Id.* Here, the ALJ found that Plaintiff had cleared that threshold by showing the existence of a medically determinable impairment. (R. at 14.)

Plaintiff essentially argues that the ALJ erred by setting too low a hurdle for Plaintiff to clear at step one. Regardless of how difficult the ALJ made the threshold question, Plaintiff ended up with a favorable step one finding. The ALJ found the existence of a medical

impairment and progressed to step two. Therefore, Plaintiff can point to no harm resulting from the ALJ's step one analysis.

This Court previously affirmed a similar application of the *Craig* analysis as the one used here. *Bullock v. Astrue*, 2009 WL 1350662, at *13-14 (E.D. Va. May 12, 2009). In *Bullock*, the ALJ reviewed the medical record and Bullock's subjective complaints and concluded that Bullock's acknowledged daily activities and medical record contradicted his alleged pain. *Id.* at *13. The ALJ determined that the "claimant's medically determinable impairments could reasonably be expected to produce *some* of the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." *Id.* at *13 (emphasis added) (internal quotations omitted). The Court concluded that "[t]he ALJ performed the required *Craig* analysis and provided an explicit rationale to support his conclusions." *Id.* at *14.

As Plaintiff himself notes, numerous other courts within the Fourth Circuit have declined to remand on such a minor point and affirmed similar applications of the *Craig* analysis.[2] (Pl.'s Mem. at 5.) Consistently, the Court declines to recommend remand on that basis here.

---

[2] *See Smith v. Astrue*, 2011 WL 1303637 (W.D.N.C. 2011) (finding that an ALJ did not err by finding that the claimant's impairment could reasonably cause some of the alleged pain); *Hunter v. Colvin*, 2013 WL 2122575, at *9 (M.D.N.C. 2015) ("As noted, the ALJ 'careful[ly] consider[ed]' the evidence and found that Plaintiff's impairments 'could reasonably be expected to cause some symptoms.' Thus, the ALJ performed the first step of the *Craig* analysis." (internal citations omitted)); *Pittman v. Massanari*, 141 F.Supp.2d 601, 611 (W.D.N.C. 2001) ("The record contains evidence of Plaintiff's post-tibial fracture bony defect—a condition which *could* reasonably be expected to produce some of the pain claimed by Plaintiff—and thus the ALJ essentially found that Plaintiff could satisfy the first prong of the test articulated in *Craig*."); *Sanders v. Apfel*, 2001 WL 114360, at *7 (W.D.N.C. 2001) ("The record contains evidence of Plaintiff's liver pain and seizures—conditions which *could* reasonably be expected to produce some of the pain claimed by Plaintiff—and thus the ALJ essentially found that Plaintiff could satisfy the first prong of the test articulated in *Craig*.").

### C. Substantial evidence in the record supports the ALJ's credibility finding at step two of the *Craig* analysis.

Plaintiff contends that the ALJ erred by failing to provide a proper credibility finding at step two of the *Craig* analysis. (Pl.'s Mem. at 7-8.) According to Plaintiff, the ALJ used boilerplate language that fails to explain exactly how Plaintiff lacks credibility, as well as insufficient evidence from the record for the credibility finding. (Pl.'s Mem. at 7-10.) Defendant responds that the ALJ's credibility finding, as supported by substantial evidence, demonstrated the conflict between the alleged severity of Plaintiff's symptoms and the objective medical evidence. (Def.'s Mem. at 16-23.)

This Court must give great deference to the ALJ's credibility determinations. *Eldeco, Inc. v. N.L.R.B.*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *N.L.R.B. v. Air Prods. & Chems. Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *N.L.R.B. v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, Plaintiff's subjective allegations of pain do not alone provide conclusive evidence that Plaintiff suffers from a disability. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). Instead, "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591. The ALJ's evaluation must take into account "all the available evidence," including a credibility

determination of the claimant's statements regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d at 595-96; SSR 96-7p at 5-6, 11.[3]

Here, the ALJ found Plaintiff's statements "not entirely credible." (R. at 14.) Following this finding, the ALJ conducted a thorough review of the medical evidence in the record. (R. at 14-15.) The ALJ noted that appropriate medication controlled Plaintiff's diabetes mellitus. (R. at 14.) Next, the ALJ addressed Plaintiff's cerebrovascular incident, observing that although it had a substantial short-term impact on Plaintiff, the stroke's effects largely subsided by the end of his three-day hospitalization. (R. at 14-15.) The ALJ also discussed Plaintiff's medical appointments after the stroke in which he exhibited generally normal functional capabilities. (R. at 15.) After this review, the ALJ turned to evaluating Plaintiff's activities of daily living, pointing out contradictions in the alleged symptoms and acknowledged activities. (R. at 15-16.) The ALJ concluded with a review of the findings of the state agency physicians, which he found consistent with evidence in the medical record. (R. at 16.)

Plaintiff ignores key components of the ALJ's decision. First, the ALJ did not simply rely on boilerplate language in finding that Plaintiff lacked credibility. Rather, the ALJ contrasted Plaintiff's assertion that his symptoms prevent him from performing basic work tasks with his acknowledged daily activities, including "maintain[ing] personal needs and grooming (e.g., eat with a fork, spoon, and knife, bathe and shower, and dress himself), cook[ing], tak[ing]

---

[3] On March 16, 2016, the Agency issued SSR 16-3p, which rescinded and superseded SSR 96-7p, eliminating the credibility finding at issue here. The ALJ issued his opinion on June 24, 2014, before SSR 16-3p took effect. The Agency does not have the power to engage in retroactive rulemaking. *Compare Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 208 (1988) (requiring Congress to expressly convey the power to promulgate retroactive rules due to its disfavored place in the law), *with* 42 U.S.C. § 405(a) (granting the Agency the general power to make rules, but not granting the Agency retroactive rulemaking power). Because the SSR does not have retroactive effect, the Court will review the ALJ's decision under SSR 96-7p.

15

walks, and complet[ing] household chores such as washing dishes, vacuuming, sweeping, laundry, and taking out the garbage." (R. at 15.) The ALJ concluded that "[t]hese activities suggest that his alleged symptoms and limitations may have been overstated." (R. at 15.) This language distinguishes the testimony that the ALJ found credible from that which he did not.

Second, the ALJ comprehensively reviewed evidence in the record that contradicted the severity of limitations alleged by Plaintiff. Plaintiff's characterization of the ALJ's credibility finding focuses on the discussion of Plaintiff's daily activities. (Pl.'s Mem. at 8-10.) However, that analysis comprised only one component of the ALJ's three-part comprehensive review, which also included analysis of the medical record and the consistency between the state agency physicians' findings and the medical record. (R. at 14-16.) While the ALJ noted contradictions between Plaintiff's alleged limitations and his acknowledged daily activities, the ALJ also relied upon objective medical evidence that did not substantiate those limitations. (R. at 16.) Indeed, upon completing the three-part analysis, the ALJ concluded that "[f]or the reasons set forth above, the claimant's subjective complaints are only partially credible, and the objective medical evidence does not support the alleged severity of the symptoms." (R. at 16.)

Close review of the medical evidence in the record shows that substantial evidence supports the ALJ's credibility determination. Plaintiff took medication to manage his diabetes. (R. at 310, 507-08.) On the day of his stroke, Drs. Eileen Chu and Edward Dillon reported that Plaintiff had normal range of motion and strength in the upper and lower extremities bilaterally. (R. at 237.) Plaintiff's breathing, mood and orientation were also normal. (R. at 237.) Further, Plaintiff's strength "greatly improved" over the course of hospitalization. (R. at 233.) During subsequent medical examinations, Plaintiff's physical functions, including gait and station,

strength in his upper and lower extremities, and orientation, among others, appeared normal. (R. at 15, 313, 321-23, 329-30, 370, 446, 465-66, 469, 499.)

In addition to evidence in the medical record, the findings of the two state agency physicians support the conclusion that Plaintiff's symptoms do not rise to the severity alleged by Plaintiff. (R. at 55-60, 62-68.) On two separate occasions, the physicians found that Plaintiff's symptoms did not impede his ability to perform basic work activities. (R. at 60, 67-68.)

The ALJ's decision in no way frustrates a meaningful review of the conclusions regarding Plaintiff's credibility. And a meaningful review finds that substantial evidence supports the ALJ's decision. Plaintiff's argument that the ALJ erred at step two of the *Craig* analysis lacks merit and, therefore, must fail.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 8) and Plaintiff's Motion to Remand (ECF No. 9) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 11) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

_____/s/_____
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: October 14, 2016